IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

GARY McBRIDE                                                                                    PLAINTIFF

VS.                                      5:09CV00014 JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                                    DEFENDANT

## MEMORANDUM AND ORDER

Plaintiff, Gary McBride, has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have submitted Appeal Briefs[1] (docket entries #23 and #24), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[2] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

---

[1] Plaintiff actually filed a Motion for Summary Judgment and Brief in Support. (Docket # 23). In this District, Social Security cases are now decided on Appeal Briefs. The Court will treat Plaintiff's Brief in Support of Motion for Summary Judgment as an Appeal Brief.

[2] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

In his "Disability Report — Adult," which was completed on October 1, 2007, Plaintiff alleged that he was limited in his ability to work by arthritis, lupus and shortness of breath. (Tr. 65). On December 19, 2007, the Administrative Law Judge ("ALJ") conducted an administrative hearing during which Plaintiff testified. (Tr. 404-31). On May 29, 2008, the ALJ entered his decision (Tr. 10-18), holding that Plaintiff had not been under a disability, within the meaning of the Social Security Act, at any time through the date of his decision.

On November 25, 2008, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making it the final decision of the Commissioner. (Tr. 2-4). Plaintiff then filed his Complaint initiating this appeal. (Docket entry #2).

Plaintiff was 36 years old at the time of the administrative hearing. (Tr. 408). He was a high school graduate, and had attended but did not graduate from hair styling school.[3] (Tr. 70, 408-09). He had past relevant work as a machine operator, a cemetery groundskeeper, and an apartment maintenance man. (Tr. 10, 66-67).

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i) (2007). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id.* at §§ 404.1520(b); 416.920(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. *Id.* at §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.* at §§ 404.1520(c); 416.920(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment. *Id.*, §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If so, and the duration requirement is

---

[3]On his Disability Report - Adult, he indicated that he completed styling school in 2002. (Tr. 70).

met, benefits are awarded. *Id.*

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. *Id.*, §§ 404.1520(a)(4); 416.920(a)(4). This residual functional capacity assessment is utilized at Steps 4 and 5. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id.*, §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id.*

The ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since his amended alleged onset date of November 1, 2005 (Tr. 10); (2) had "severe" impairments including systemic lupus erythematosus, poly-arthralgias and arthralgias of the shoulders (*id.*); (3) did not have an impairment or combination of impairments that met or equaled a Listing (Tr. 10-11); (4) was not fully credible in his subjective allegations (Tr. 14); (5) retained the residual functional capacity for a full range of sedentary work (Tr. 16); (6) was unable to perform his past relevant work (*id.*); (7) but was able to perform other jobs which existed in significant numbers in the national economy.[4] (Tr. 17). Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

Plaintiff argues that the ALJ erred: (1) in finding Plaintiff capable of a full range of sedentary work; (2) in failing to accord adequate weight to the opinions of Plaintiff's treating physicians; (3) in his credibility determination; (4) in failing to discuss or evaluate the weight accorded most of the medical evidence; and (5) in failing to obtain the vocational expert testimony necessary to properly consider Plaintiff's significant nonexertional limitations. Plaintiff's second and fourth arguments

---

[4]The ALJ correctly noted that, once Plaintiff was determined to be unable to perform his past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that he could perform, given his residual functional capacity, age, education and past work. (Tr. 16). In reaching his decision, the ALJ applied Plaintiff's vocational profile and RFC to Medical-Vocational Guideline Rule 201.27, Table No. 1, Appendix 2, Subpart P, Regulations No. 4. Applying that Guideline, the ALJ found that Plaintiff was not disabled. (Tr. 17).

are closely related and will be discussed together.  Plaintiff's other arguments will be addressed separately.

First, Plaintiff contends that the ALJ erred by finding he was capable of performing a full range of sedentary work.  (Pltf's App. Br. at 6-9).  In January of 2007, Plaintiff underwent a general physical examination which was performed by Dr. Atiya Waheed.  (Tr. 172-78). It revealed that he had a full range of motion in the spine; and a slightly decreased range of motion in his hands, hips and knees, but otherwise a full range of motion in all extremities. (Tr. 175).  He had swelling in his hands and feet.  (Tr. 176).  He was neurologically intact, and there was no evidence of muscle weakness or atrophy, and no sensory abnormalities.  *Id.*  His gait and coordination were slow.  *Id.* He had the ability to hold a pen and write, touch fingertips to palms, grip, oppose thumb to fingers, pick up a coin with difficulty, stand and walk without assistive device; he was off balance when he attempted to walk on heels and toes; and he could squat and arise from a squatting position only with difficulty.  (Tr. 176).  There was no edema.  (Tr. 177).  There was no evidence of serious mood disorder or psychosis and he was oriented to time, person and place.  *Id.*  Dr. Waheed did not indicate any limitation on Plaintiff's ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak.  (Tr. 178). However she did recommend that Plaintiff be examined by an ophthalmologist and a rheumatologist.  *Id.*

Dr. Tamer Alsebai, a rheumatologist, saw Plaintiff on October 5, 2007.  (Tr. 385-86).  He complained of shortness of breath and swelling in his feet.  (Tr. 385).  Upon physical examination, Dr. Alsebai observed he "was not in acute respiratory distress.  He is ambulating without an assistive device."  *Id.*  There was no edema or rash noticed.  *Id.*   There were no gross motor or sensory deficits and he had good muscle strength throughout.  *Id.*  There was no active synovitis in any joint. *Id.*  Chest x-rays taken that day revealed no acute process.  (Tr. 392).  Dr. Alsebai noted arthralgias without arthritis. (Tr. 386).  On December 6, 2007, after obtaining the results of laboratory tests, Dr. Alsebai confirmed the diagnosis of lupus, but again observed no respiratory distress, ambulation without assistance, no edema or skin problems and no joint synovitis.  (Tr. 393).  Plaintiff was to return to see Dr. Alsebai in two months, sooner if necessary.  *Id.*  The record contains no more

treatment records from Dr. Alsebai.[5]

On February 25, 2008, Dr. Ed Hankins saw Plaintiff for an eye exam. (Tr. 394-95). He noted Plaintiff was taking prednisone, which could cause problems if used chronically, but there were no problems at that time. (Tr. 394). Although Plaintiff complained of eye swelling and pain, Dr. Hankins found no ocular cause for pain. *Id.*

In arguing that the ALJ erred in finding that Plaintiff could perform a full range of sedentary work, Plaintiff is seeking to place the burden of proof on the Commissioner. It is the claimant's burden to prove his residual functional capacity. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Masterson v. Barnhart*, 383 F.3d 731, 737 (8th Cir. 2004); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

It is noteworthy that in Plaintiff's Appeal Brief he repeatedly states:

> [H]e has problems with using his hands, including loss of grip and unable to do fine manipulations. He has problems with pushing and pulling, and overhead arm activities, such as changing a light bulb or placing something on a shelf. (Tr. 421).

(Pltf's App. Br. at 5, 7, 8, 20). During the administrative hearing, Plaintiff testified only that he had tingling pain in his hands.[6] (Tr. 421). However, none of the other alleged problems with Plaintiff's hands and arms, as described in Plaintiff's Appeal Brief, find any support in the record. Thus, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff was capable of a full range of sedentary work.

Plaintiff's second and fourth arguments contend that the ALJ did not give appropriate weight to the medical evidence, especially to the opinions of his treating physicians, Dr. Alsebai and Dr.

---

[5]The transcript page numbers for individual exhibits are not included on the List of Exhibits. (Tr. 1). The Commissioner's usual practice is to include page numbers for each exhibit. That practice is helpful to the Court and, no doubt, to the attorneys for the respective parties. It should be followed in all transcripts.

[6]Plaintiff's attorney asked him if he had problems picking up "nuts and bolts or coins on a flat table." Plaintiff responded: "No sir, I would have no problem." (Tr. 422).

Paul Davis, Plaintiff's family physician. (Pltf's App. Br. at 9-12, 18-19). There is some question as to the weight to be given the opinions of Drs. Alsebai and Davis as "treating physicians." Dr. Alsebai saw Plaintiff on only two occasions. (Tr. 385-86, 393). Dr. Davis saw him when he was hospitalized and then saw him in the office three times. (Tr. 301-02, 164-66). *See Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (doctor had only met with patient on three occasions when she filled out checklist). "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i) (2007).

In Plaintiff's Appeal Brief, he repeatedly states that Dr. Alsebai diagnosed:

> systemic lupus erythematosus, anemia of chronic disease, poly arthralgias and arthralgias of the shoulders, myalgias or possibility myofascial pain syndrome, rheumatoid arthritis, positive ANA [antinuclear antibody], positive SSA [Sjögren's syndrome antigen] and he has at least eight tender points in fibromyalgia sites. (Tr. 165, 166, 301, 385, 386, 393).

(Pltf's App. Brf. at 4, 7, 10). Dr. Alsebai never diagnosed rheumatoid arthritis. In fact, he diagnosed arthralgias, *without arthritis*. (Tr. 386). Although he indicated Plaintiff had "multiple tender points," none of the cited pages (some of which are not attributable to Dr. Alsebai) indicated Plaintiff had "at least eight tender points in fibromyalgia sites."

The first time that Dr. Davis saw Plaintiff, on May 22, 2006, he noted: "Having positive RA and ANA, etc. I think he has both rheumatoid and lupus. Had extremely high RA titer. He is aching and hurting, not feeling good. He has run out of his prednisone." (Tr. 166). At the next visit, Dr. Davis recorded:

> This 35 y/o in at this time doing better. He still has a lot of aches and pains, but they are slowly decreasing. At night, he has a little trouble breathing. Not so much in the daytime. No obvious acute findings. He looks much better than before. Finally gaining some weight back.

(Tr. 165). After Plaintiff missed his next two appointments, Dr. Davis released him from his care. *Id.*

On November 9, 2006, Dr. Davis again saw Plaintiff for a complaint of recurring dermatitis. (Tr. 164). There is no indication in the record that Dr. Davis saw him again after that date.

Plaintiff faults the ALJ for not discussing Dr. Davis' diagnosis of "rheumatoid arthritis." (Pltf. App. Br. at 10). While Dr. Davis' remark, "I think he has both rheumatoid and lupus," might be construed as something less than a conclusive diagnosis, the ALJ nonetheless did take note of it:

> On May 22, 2006, Mr. McBride was seen by his treating physician, Dr. Paul Davis. Dr. Davis felt that the claimant had both rheumatoid arthritis and lupus as previous laboratory testing had revealed positive RA and ANA, and an extremely high RA titer. The claimant complained of aching and hurting, but reported that he had had [sic] run out of Prednisone, and was placed back on Prednisone and was given anti-inflammatory and pain medication. Further laboratory testing was performed by Dr. Davis, and on May 24, 2006, reported that the claimant's laboratory testing had showed extensively positive ANA and his Prednisone dosage was increased (Exhibit 2F). On follow-up, June 26, 2006, the claimant still complained of a lot of aches and pains, but admitted that they were slowly decreasing. He also complained of a little trouble breathing at night, but there were no obvious acute findings. Dr. Davis concluded that the claimant looked much better, was finally gaining weight, and examination was fairly stable and the claimant had mobility. He was told to continue on his current medications.

(Tr. 12).

Assuming that Dr. Davis' remark was a diagnosis, Dr. Alsebai, a rheumatologist, did *not* agree with it. (Tr. 386). The trier of fact has the duty to resolve conflicting medical evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). Generally, more weight is given to the opinion of a specialist about medical issues related to the area of the specialty than to the opinion of a source who is not a specialist. 20 C.F.R. §§ 404.1527(d)(5); 416.927(d)(5) (2007); *see Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994).

In Plaintiff's Appeal Brief at 12, he contends that the ALJ failed to mention or discuss the report of consultative examiner Dr. Atiya Waheed, M.D. (Tr. 172-78). (Pltf. App. Br. 12). Again, that is simply not the case. In his decision, the ALJ noted the following:

> On January 4, 2007, he underwent a general physical consultative examination by Dr. Atiya Waheed. The claimant reported a history of 1 ½ years of lupus, pain in both hands and legs, numbness in his hands, pain in his neck and arms, and shortness of breath. He complained of skin rash, sweating, history of high blood pressure, and history of congestive heart failure. The claimant reported that he was currently on Prednisone, Septra and antibiotics. On examination, lungs were clear with dullness at bases, and heart and abdominal examination was normal. Skin rash was present with some old, healed and a few fresh skin rashes. There was pain with straight leg raising and some limitation of motion of the hips and knees. There was swelling and pain in his hands and feet with decreased range of motion, but no weakness, atrophy or sensory abnormalities, and grip strength was normal. He had difficulty picking up a coin, otherwise hand function was intact. He walked with a slow gait, and was

> off balance when walking on heel and toes, and had difficulty squatting and arising from a squatting position. He was diagnosed with lupus, lupus affecting skin and lungs, and history of hypertension. Dr. Waheed indicated that the claimant needed to be seen by a rheumatologist and needed to have an eye examination for possible eye problems secondary to his prednisone, but he placed no limitations on the claimant's ability to function (Exhibit 3F).

(Tr. 13).

The ALJ did a more than adequate job of setting out the medical evidence. (Tr. 11-15). The Court finds that he gave appropriate weight to the medical evidence and reports of examining and treating physicians.

Plaintiff's third argument is that the ALJ erred in evaluating his credibility. (Pltf's App. Brf. at 12-17). In the ALJ's decision (Tr. 14-15), he considered Plaintiff's subjective complaints in light of the following factors noted by the Court in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):[7]

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
>     1. the claimant's daily activities;
>
>     2. the duration, frequency and intensity of the pain;
>
>     3. precipitating and aggravating factors;
>
>     4. dosage, effectiveness and side effects of medication;
>
>     5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

There is little objective support in the record for Plaintiff's claim of disability. No evaluations showed medical conditions that were disabling. Furthermore, inconsistencies between the medical evidence and Plaintiff's subjective complaints gave reason to discount those complaints. *Richmond v. Shalala*, 23 F.3d 1141, 1443 (8th Cir. 1994).

---

[7] The ALJ also cited Social Security Ruling 96-7p. (Tr. 14). That Ruling tracks *Polaski* and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and elaborates on them.

For example, Plaintiff originally alleged an onset date of March 15, 2003. (Tr. 47, 66, 405). On June 3, 2003, he went to the Emergency Room of Jefferson Regional Medical Center complaining of a sprain to his left arm playing baseball the day before. (Tr. 382). He told personnel he was employed by Henson Pipe Line. *Id.* On October 19, 2003, he went to the Emergency Room and he indicated that he was employed by Snappy Lube in Pine Bluff. (Tr. 380). On November 3, 2003, he reported having been in an altercation and still listed his employer as Snappy Lube. (Tr. 377). On April 11, 2005, he returned with complaints of chest pain and difficulty breathing, and listed his employer as Jiffy Lube. (Tr. 262).

Plaintiff told Dr. Alsebai that he was having trouble with his eyes and knew he need to see an eye doctor. (Tr. 385). However, when he did see an eye doctor some four months later, the doctor found no problem with his eyes and no cause for ocular pain. (Tr. 394).

As the ALJ noted, Plaintiff was not fully compliant with his treatment or medication regimen. (Tr. 15). He sometimes did not get prescriptions filled and he missed appointments. (Tr. 165 267). He did not return to see Dr. Alsebai, although the doctor had told him to do so. (Tr. 393).

Given the lack of medical evidence in support of Plaintiff's allegations of disability, the lack of more consistent treatment of the underlying disease, Plaintiff's daily activities, his poor work record, his functional capabilities and the lack of restriction placed on Plaintiff by his physicians, the ALJ could properly discount Plaintiff's subjective complaints. *See*, *e.g.*, *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (ALJ may discount subjective complaints if there are inconsistencies in the record as a whole); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (ALJ may discount complaints inconsistent with the evidence as a whole); *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) (after full consideration of all evidence relating to subjective complaints, ALJ may discount complaints if there are inconsistencies in evidence as a whole).

Thus, the Court concludes that the ALJ's credibility analysis was proper. He followed the law and regulations, made express credibility findings and gave multiple valid reasons for discrediting Plaintiff's subjective complaints. *E.g.*, *Finch v. Astrue*, 547 F.3d 933, 935-36 (8th Cir. 2008); *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996); *Reynolds v. Chater*, 82 F.3d 254, 258

(8th Cir. 1996);  *Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995).  His credibility findings are entitled to deference as long as they are supported by good reasons and substantial evidence.  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

Finally, Plaintiff argues that the ALJ erred in failing to obtain vocational expert testimony which was required in order to evaluate Plaintiff's significant nonexertional impairments.  (Pltf's App. Br. at 19-21).

> Generally, if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert.  *Groeper v. Sullivan*, 932 F.2d 1234, 1235 n. 1 (8th Cir. 1991).  In those instances, the ALJ cannot rely exclusively on the guidelines to direct a conclusion of whether claimant is "disabled" or "not disabled."  *Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir. 1988).  Instead, testimony of a vocational expert must be taken.  *Groeper*, 932 F.2d at 1235.  The exception to this general rule is that the ALJ may exclusively rely on the guidelines even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC to perform the full range of activities listed in the guidelines.  *Thompson*, 850 F.2d at 349-350 (emphasis added).

*Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993) (emphasis in original); *accord*, *McGeorge v. Barnhart*, 321 F.3d 766, 768-69 (8th Cir. 2003); *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001);  *Holz v. Apfel*, 191 F.3d 945, 947 (8th Cir. 1999).

In support of his argument, Plaintiff points to testimony that simply does not exist in the transcript of the administrative hearing.  (Pltf's App. Brf. at 20). Furthermore, some of his testimony during the administrative hearing actually refutes the argument that he had serious limitations in using his hands:

> Q  Would you have problems in, in picking up if you had some nuts and bolts or coins on a flat table like you're seated in front of?  Would you have problems in picking up those things?
>
> A No, sir.  I, I would have no problem.  No, nothing --
>
> Q You could do that?
>
> A Yeah.  Nuts and bolts.

(Tr. 422). While Plaintiff testified to problems with his hands,  the ALJ did not believe the full extent of those problems. Dr. Waheed's physical examination of Plaintiff supports the ALJ's

determination. As the ALJ noted, Dr. Waheed found only that Plaintiff "had difficulty picking up a coin, otherwise hand function was intact." (Tr. 13). The record firmly supports the ALJ's finding that Plaintiff had no nonexertional impairment that significantly affected his residual functional capacity to perform a full range of sedentary work activities.

### III. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also, Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is hereby affirmed and Plaintiff's Complaint is hereby dismissed, with prejudice.

DATED this 30th day of March, 2010.

_____
UNITED STATES MAGISTRATE JUDGE